## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA FORD and PHILLIP FAVIA, individually, and on behalf of all others similarly situated, | ) ) ) ) | Case No. 09-cv-07867 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Hon. Joan H. Lefkow |
| PACIFIC WEBWORKS, INC., a Nevada corporation; BLOOSKY INTERACTIVE, LLC, a California limited liability company; and INTERMARK COMMUNICATIONS, INC., a New York corporation, | ) ) ) ) ) ) | **PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| Defendants. | ) ) ) | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Plaintiffs Barbara Ford and Phillip Favia bring this First Amended Class Action Complaint against Defendants Pacific WebWorks, Inc., Intermark Communications, Inc., and Bloosky Interactive, LLC (hereinafter collectively referred to as "Defendants") based upon Defendants' practice of deceptively marketing to and billing Plaintiffs and similarly-situated others for unauthorized charges.  Plaintiffs, for their Amended Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their own attorneys.

### <u>Parties</u>

1.      Plaintiff Barbara Ford is an Illinois resident.

2.      Plaintiff Phillip Favia is an Illinois resident.

3.      Defendant Pacific WebWorks is an online provider of work-at-home products marketed to consumers nationwide.   Pacific WebWorks is a Nevada corporation headquartered

in and having its principal place of business at 230 West 400 South, 1st Floor, Salt Lake City, Utah 84101. It does business in the State of Illinois and nationwide.

4.      Defendant Bloosky Interactive, LLC, is an ad network generating online advertisements, consumer traffic for websites selling products and goods, and conversion optimization for those websites. Bloosky also performs as an affiliate marketer in this online space. Bloosky is headquartered in and has its principal place of business at 9 Pasteur, Suite 100, Irvine, California 92618. It does business in the State of Illinois and nationwide.

5.      Defendant Intermark Communications, Inc. is an ad network generating online advertisements, consumer traffic for websites selling products and goods, and conversion optimization for those websites. Intermark also performs as an affiliate marketer in this online space. Intermark is headquartered in and has its principal place of business at 135 Crossways Park Drive, Suite 203, Woodbury, New York 11797. It does business in the State of Illinois and nationwide.

## Jurisdiction and Venue

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

7.      Venue is proper in this District under 28 U.S.C. § 1391(a) as the injury arose in this District. Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business, and entering into consumer transactions.

**Facts Common to All Counts**

8.    With unemployment rising and wages stagnant, Americans are suffering through the worst economy in decades.   In these hard times, ordinary consumers are more than ever subjected to a proliferation of work-at-home offers that promise the ability to easily make thousands of dollars from at-home businesses.

9.    The offers hosted by Defendant Pacific WebWorks, and marketed by Intermark and Bloosky, state that consumers will work directly with and be well-paid by the giant web search engine Google.  The ability to work for this enormously successful company reasonably supports the promise of good income described in the offers from Defendants.

10.    Defendants' offers begin as initial representations made through a common deceptive scheme managed collaboratively by Pacific WebWorks, Intermark, and Bloosky, constituting spam email offers, sponsored links, banner ads on internet search pages, and links in fake news articles and fake blogs.  The purpose of each of these initial representations is to drive consumer traffic to credit card submit landing pages at which a purchase can be made.

11.    These sponsored links, banner ads, fake news articles, and similar methods of gaining a consumer's attention are created and operated by a group of affiliate marketers and ad networks, such as Intermark and Bloosky, whose sole objective is to drive traffic to merchant landing pages such as those selling Defendant Pacific WebWorks's products.  Intermark and Bloosky act in this space as ad networks and/or affiliate marketers, and in that capacity, actively drive traffic to Pacific WebWorks websites for their own monetary gain.  The relationship between Pacific WebWorks on the one hand, and Intermark and Bloosky on the other, is one of interdependence:  Pacific WebWorks needs the ad networks to market to and contract with affiliate publishers who further propagate the deception through fake news articles and blogs;

3

likewise, Intermark and Bloosky need Pacific WebWorks to monetize the consumer traffic through purchases and thereafter remit payment to the ad networks.

12.     Defendant Pacific WebWorks, Intermark, and Bloosky work together to "optimize" transaction pages so as to drive ever-higher rates of purchase.  All Defendants are motivated to take this active role because the sales revenue generated on a Pacific WebWorks site is the only way that Pacific WebWorks, Intermark, and Bloosky are compensated. Therefore, Intermark and Bloosky have a vested interest in not only directing consumers to the product page, but also in actively ensuring that a consumer purchases the product.  This optimization can include changing the design of ad pages in the order path including the color, words used, placement of words, font size, placement of the Terms of Service, and the use of "pressures" like "You Qualify for Instant Access!" and "…these kits are going FAST!," or the use of running timers counting down the minutes left before an offer "expires."  Such pressures are simply fabrications and are dynamically inserted into the website at specified screen locations to further drive sales.

13.     Intermark and Bloosky employee "affiliate managers" and other representative employees to communicate directly with the affiliate publishers who create deceptive advertising such as sponsored links and fake news articles and blogs, with the purpose of matching them with the highest converting merchant offers (usually the most deceptive), and help them optimize their advertising materials by providing templates and ad copy.  At the same time, Intermark and Bloosky employees communicate with merchants like Pacific WebWorks so as to match their transaction pages with publishers' advertising pages and optimize their own transaction pages for higher conversion rates (making them more deceptive).  These affiliate managers have full visibility and knowledge of the deceptive advertisements used to drive traffic to work-at-home

offers, and likewise, the full knowledge and visibility of the deceptive nature of merchants' transaction pages.

14.     As a primary inducement, consumers are often simply responding to the many initial representations and screenshots that appear to state a relationship with Google itself within order paths managed by Intermark and Bloosky.  The use of Google's name in this manner, and specifically the prospect of working for one of the world's most successful companies, appears as a primary non-price inducement to deceptively entice consumers to purchase the Pacific WebWorks product.

15.     After a consumer is directed by Intermark or Bloosky to a Pacific WebWorks landing page displaying a work-at-home offer, Pacific WebWorks pushes a product, often a CD or software kit, purportedly designed to enable consumers to "Earn up to $978 or more a day using GOOGLE," "Work from Home & learn to make $1000s a day using GOOGLE!," and "Anyone with a computer and basic typing skills can make money using Google!"

16.     These landing pages typically contain language describing their offering  "As seen on: Fox News, CNN," and "USAToday."  The website prominently features network logos without license from these media entities and are plainly designed to suggest to a consumer that the offering is supported by a reputable entity.  Pacific WebWorks products have never been "seen on" or endorsed by any of the networks claimed on the website.

17.     The initial landing page seen by a consumer is bright and welcoming, and promises "FAST CASH USING GOOGLE" and "HOME INCOME USING GOOGLE," among other pleasing inducements.  Representations that drive consumers to these landing pages within the order paths managed by Intermark and Bloosky promise "$7500 a month Working from Home Job: requires basic computer skills."  Banner ads even promise "scam free" offers that link

to landing pages created by Intermark and Bloosky's business partners on which consumers are promised Pacific WebWorks products at prices that are not, in fact, remotely close to the actual price charged by Pacific WebWorks.

18.     Defendant's landing pages contain a testimonial photo of a consumer that benefited from Defendant's product.  In fact, this photo is a fake, inasmuch as Defendant simply uses a stock photo (commonly available at websites like iStockPhoto.com) and fabricates the testimonial.

19.     In furtherance of the deception, Defendant's landing pages may be reached from embedded links in fake blog testimonials ("flogs") and fake news articles with, again, stock photos and testimonials purportedly representing actual consumers from one's own city or state. These consumers relate stories of terrific success using the Pacific WebWorks product. Examples of these flogs and fake news articles deceptively used to sell Pacific WebWorks's products are:

a.     "USA Online Journal-Finance News" in which "Mary Steadman"[1] tells how she "quit her boring job as a manufacturer's representative" and "now makes $6,500+ a month" using Pacific WebWorks products.

---

[1] "Mary Steadman," the most widely used fake person in fake news articles selling work-at-home products, is also featured on the following fake news sites, and at least 90 more websites all across the internet:

www.SanFrancisco-Tribune.com, www.SanFranCiscoCityHearld.com, www.Sandiego-Tribune-News.com, www.SanDiego-Tribune.com, www.SanJose-Herald.com, www.SanJose-Times.com, www.TheLosAngelesJournal.com, www.LosAngelesTribuneNews, www.LosAngelesNews7.com, www.LosAngelesFinanceNews.com, www.Los-Angeles-Weekly.com, www.LosAngelesDispatch.com, www.4KAWeekIn3Steps.com, www.Action7Journal.com, www.AmericaFinanceNews.com, www.AmericaJobJournal.com, www.AmericaNewsDaily.com, www.B12-Media.com, www.BargainBoomer.com, www.Best-Job-In.com, www.BirmingHamTribune.co.uk, www.Boston-BusinessNews.com, www.Boston-Tribune.com, www.BostonFinanceNews.com, www.BostonGazetteNews.com,

b.     "Consumer Weekly," which utilizes the same photo of the woman claiming to be "Mary Steadman" above, but in this instance she has the name "Elaine Love," also lost her "boring" manufacturing job and now makes thousands using Pacific WebWorks products.

c.     "Chicago Job News" at which "Jerry Reynolds" describes how he "lost his boring job as an account representative for a manufacturing company" and "now makes $5,500+ a month just by submitting small text ads online on Google."

d.      "Scott Hunter" on "wthguide.info," a fake blog that states how Mr. Hunter also "lost his job as a boring account representative for a manufacturing company."  "Scott" makes "$9,000+ a month just by submitting small text ads on Google."  Upon information and belief, "Scott Hunter" is the pseudonym of an affiliate marketer driving traffic to a Pacific WebWorks site.

20.     Defendant Pacific WebWorks also derives sales from online traffic routed through fake consumer review sites.  At these sites, alleged "advocates" for consumers endorse Pacific WebWorks's products with laudatory language and within the body of the fake reviews link to deceptive transaction pages for those products.  Intermark and Bloosky provide the necessary conduit between the publishers of fake advertising materials and Pacific WebWorks by contracting with both parties to drive deceived consumers from the initial misrepresentations to a credit card submit page.

21.     The online order path leading to Defendant's transaction pages are littered with pictures of individuals that testify to the success they have enjoyed using Pacific WebWorks's product.  The individuals in Defendant's fake photos are not from the consumer's city or state; in fact, the specific locale represented is dynamically generated by instructions contained in the

---

www.OrlandoWebTimes.com, www.ReadSomeNews.com, www.Online-Job-News.com, www.NYGazetteNews.com, www.NewYorkPostHearld.com,www.NewYorkPostHearld.com.

underlying source code for the screen page presented. That is, "Sara Stanley" from "Chicago" is in fact simply a fictitious person whose city name is generated by source code that recognizes and responds to the (Chicago) IP address of the consumer's computer.

22. A consumer is required to give Pacific WebWorks certain "personally identifying information" (PII) to "CHECK AVAILABILITY" of this "<u>LIMITED TIME OFFER</u>!" A consumer's submission of her PII enables Pacific WebWorks to sell this information to other marketers of goods and products. Thus, a consumer actually does not have to "qualify" for anything, but is instead submitting to a lead generation process by which their PII (a "lead") is monetized by Pacific WebWorks and the consumer unknowingly "consents" to the receipt of additional email offers from an untold number of merchants, *i.e.*, anyone to whom Pacific WebWorks can sell this information.

23. The product offered by Pacific WebWorks is promised at the minimal price of $2.00 or less, which is represented as covering all costs of the product.

24. Importantly, in order to cover this small charge, Pacific WebWorks requires that consumers give it a credit card number.

25. A consumer's credit card number is entered into a credit card submit field on an online transaction page (the transaction page most often directly follows the landing page – the order path may be understood as starting with the initial representation that drives traffic to the landing path where a consumer's PII is taken. A billing or transaction page completes the online order path).

26. Materially, the only price representation clearly and conspicuously displayed on the credit card submit page or in proximity to the credit card submit box is a line that states "**Total: $1.97.**"

27.     Calls to action like "<u>LIMITED TIME OFFER</u>!" and "WORK FROM HOME, SET YOUR OWN HOURS, THEN LIVE YOUR LIFE!" are found on these pages.  These phrases are part of a static background image that are saved and displayed every time the page loads on a consumer's browser.

28.     Compelling phrases including "Satisfaction Guaranteed," and "100% Trusted!" appear in large print scattered about the page.

29.     Ultimately, a consumer reasonably understands that ordering the Pacific WebWorks product is an action that will cause them to incur a small charge on their credit card. In fact, this small price is simply bait for a credit card number that can then be used to impose additional charges on the consumer.

30.     Though the actual price of a product is always material, in cooperating with each other, Pacific WebWorks, Intermark, and Bloosky hide the real price of their product in small print on or under the transaction page or simply does not disclose it at all on this checkout page.

31.     By simply submitting credit card information to Pacific WebWorks in payment of the discounted fee of $1.97 (Defendant also offers identical products at $.97, $1.95, and $2.95), a consumer unwittingly agrees to a monthly recurring charge of $79.90 (also, in some instances, $69.90) for access to a program purportedly containing information that enables a consumer to "Start Making Money Today!"

32.     Materially, and wholly absent any clear and conspicuous price disclosure, consumers may also find that they have been billed $24.90 by Defendant for another, unknown product.  This charge is recurring in that it appears every month on a consumer's bill.  This undisclosed negative option, deceptively tied to a consumer's agreement to pay a small amount for a Pacific WebWorks product, is charged to consumers entirely without their authorization.

33. Thus, a consumer reasonably expecting to pay $1.97 for a Pacific WebWorks product will be charged that sum plus: 1) $79.90, and 2) $24.90 a month for as long as the consumer fails to notice this charge and object to it.

34. Only the charge of $1.97 is clearly and conspicuously disclosed by Pacific WebWorks, Intermark or Bloosky to a consumer responding to work-at-home offer.

35. Pacific WebWorks acts with Intermark and Bloosky to drive traffic to, promote, and sell its work-at-home product. Correspondingly, all Defendants optimize and continually oversee the creation of the deceptive advertisements concealing material terms and conditions, described herein, and all receive significant revenue from the sale of each poorly-disclosed Pacific WebWorks product.

36. Defendants know or should know that these ads and offers violate clearly established laws requiring, among other seminal concerns, that all material purchase terms be clearly and conspicuously disclosed to consumers.

37. Although Defendants use a number of specific paths and representations for their deception, each order path has a core, common underpinning; namely, that a consumer will only be charged $1.97 for a work at home product sold by or directly associated with Google.

**Facts Relating to the Plaintiff Barbara Ford**

38. During the relevant period, Plaintiff Barbara Ford, an elderly, retired, individual on a fixed income, clicked on an advertisement located on her AOL home page. The link, which offered a Google work-at-home opportunity, was placed there by an affiliate publisher of Defendant Bloosky. The link led to a fake news article, also hosted by Bloosky's affiliate publisher, describing the life-changing experience of a woman that utilized a Pacific WebWorks product to make $5,000.00 a month. This site contained a link to Bloosky's server, which

instantaneously routed the consumer to a specific Pacific WebWorks's PII landing page, similar to the page described above. Plaintiff reasonably understood that she could receive the Pacific WebWorks product (Google Business Kit) for $1.97 on this page. Plaintiff reasonably believed that this was a Google offer.

39.     Plaintiff did not know that Google itself had nothing to do with this product nor did Plaintiff reasonably understand that, by only agreeing to pay Defendant $1.97, she also "consented" to be billed $79.90.

40.     Plaintiff only authorized Defendant to bill her credit card the charge of $1.97. Nevertheless, and wholly without authorization from Plaintiff, Pacific WebWorks took from Plaintiff an additional $79.90. Pacific WebWorks thereafter remitted a portion of that payment to Bloosky for its role in obtaining Plaintiff's unauthorized payment.

41.     Plaintiff called repeatedly to request a refund. Plaintiff finally did speak with a representative who she informed that she 1) never authorized Pacific WebWorks to bill her card the sum of $79.90, 2) never received the Google Kit, and 3) wanted to cancel her order and receive a refund of the unauthorized charge of $79.90.

42.     Plaintiff told the Pacific WebWorks representative that she would not have agreed to pay $79.90 for this product if she would have clearly understood that this was the actual price for the product offered. Nevertheless, despite her vehement assertions that she should not be charged this price, Defendant refused to give Plaintiff a refund of this money.

43.     Because Plaintiff reasonably did not trust Defendant not to bill her again without authorization for some unknown amount, Plaintiff cancelled her credit card and asked her bank to issue her a new card with a new account number.

44.     Plaintiff has *not* been given a refund from Pacific WebWorks.

## Facts Relating to Plaintiff Phillip Favia

45.     During the relevant period, Plaintiff Philip Favia clicked on an advertisement link pitching a Google work-at-home opportunity. The link, which offered a Google work-at-home product, was placed there by an affiliate publisher of Defendant Intermark.  The link led to a deceptive advertisement proclaiming that an individual can make thousands of dollars per month working with Google.  Intermark's affiliate publisher also hosted this page.

46.     This site contained a link to Intermark's server, which instantaneously routed the consumer to a specific Pacific WebWorks's PII landing page, similar to the page described above.  Plaintiff reasonably understood that he could receive the Pacific WebWorks product (Google Business Kit) for $1.97 on this landing page.  Plaintiff reasonably believed that this was a Google offer.

47.     When Plaintiff attempted to navigate away from the PII page, a "pop-up" offered the Pacific WebWorks product for the discounted cost of 99¢.

48.     Plaintiff did not know that Google itself had nothing to do with this product nor did Plaintiff reasonably understand that, by only agreeing to pay Defendant 99¢, he also "consented" to be billed $79.90.

49.     Plaintiff only authorized Defendant to bill his credit card the charge of 99 cents. Nevertheless, and wholly without authorization from Plaintiff, Pacific WebWorks took from Plaintiff an additional $79.90. Pacific WebWorks thereafter remitted a portion of that payment to Intermark for Plaintiff's conversion.

50.     Plaintiff never received any product or service from Pacific WebWorks.

51.     Plaintiff called to request a refund.  Plaintiff finally did speak with a representative who he informed that he 1) never authorized Pacific WebWorks to bill his card the

sum of $79.90, 2) never received the Google Kit, and 3) wanted to cancel his order and receive a refund of the unauthorized charge of $79.90.

52.     Plaintiff told the Pacific WebWorks representative that he would not have agreed to pay $79.90 for this product if he would have clearly understood that this was the actual price for the product offered, or if he clearly understood that the product was not in anyway affiliated with or part of Google.  Nevertheless, despite his vehement assertions that Pacific WebWorks had no justification to charge him this price, Defendant refused to give Plaintiff a refund of this money.

53.     Because Plaintiff reasonably did not trust Defendant not to bill him again without authorization for some unknown amount, Plaintiff cancelled his credit card and asked his bank to issue him a new card with a new account number.

54.     Plaintiff has *not* been given a full refund from Pacific WebWorks.

## Class Allegations

55.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a Class and two SubClasses:

**Pacific WebWorks Class:** Plaintiffs brings this action on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All Illinois residents who submitted payment information to Pacific WebWorks for the purpose of obtaining Pacific WebWorks's products or services, and who were charged any amount other than a stated shipping and handling or discounted fee.

**Bloosky Interactive SubClass:**  Plaintiff Ford brings this action on behalf of herself and a SubClass of similarly situated individuals, defined as follows:

> All Illinois residents who submitted credit card information to a Pacific WebWorks website for the purpose of obtaining Pacific WebWorks's products or services, who were charged any amount other than a stated shipping and handling or discounted

fee, and that were traceably driven to a Pacific WebWorks website(s) by Bloosky Interactive, LLC, or affiliate marketers acting through or in conjunction with Bloosky Interactive, LLC.

**Intermark Communications SubClass:** Plaintiff Favia brings this action on behalf of himself and a SubClass of similarly situated individuals, defined as follows:

All Illinois residents who submitted credit card information to a Pacific WebWorks website for the purpose of obtaining Pacific WebWorks's products or services, who were charged any amount other than a stated shipping and handling or discounted fee, and that were traceably driven to a Pacific WebWorks website(s) by Intermark Communications, Inc., or affiliate marketers acting through or in conjunction with Intermark Communications, Inc.

Hereinafter, the above-described Class and SubClasses may be stated as "Classes" for purposes of this Complaint.

The following people are excluded from the Class and SubClasses: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

56. **Numerosity:** The exact number of the members of the Classes is unknown and not available to Plaintiffs, but it is clear that individual joinder is impracticable. On information and belief, Defendants have deceived thousands of consumers who fall into the definition set forth in the Classes. Members of the Class and SubClasses can be identified through Defendants' records.

57. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, as Plaintiffs and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiffs and the

public.

58. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class and SubClasses, and Defendants has no defenses unique to Plaintiffs.

59. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class and SubClasses will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class and SubClasses to obtain effective relief from the misconduct of Defendant. Even if members of the Class and SubClasses themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

60. **Commonality:** There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

15

(a)     Whether Defendants' conduct described herein violates the Illinois

Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.);

(b)     Whether Defendants' conduct described herein violates the

Automatic Contract Renewal Act (815 ILCS 601/1 *et seq*.);

(c)     Whether Defendants' conduct described herein constitutes Fraud in

the Inducement;

(d)     Whether Defendants' conduct described herein constitutes

Conspiracy to Commit Fraud in the Inducement;

(e)     Whether Defendants' conduct described herein results in unjust

enrichment to Defendants; and,

(f)     Whether Defendant Pacific WebWorks's conduct described herein

results in a breach of contract.

## COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/1 *et seq*.)**
**(On Behalf of the Plaintiffs and the Classes)**

61**.**     Plaintiffs incorporate by reference the foregoing allegations.

62.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

(815 ILCS 505/1 *et seq*.) protects both consumers and competitors by promoting fair competition

in commercial markets for goods and services.

63.     The ICFA prohibits any unlawful, unfair or fraudulent business acts or practices

including the employment of any deception, fraud, false pretense, false promise,

misrepresentation, or the concealment, suppression, or omission of any material fact.

64.     As described within, Defendants' continued utilization of unlawful and

unconscionable marketing practices, and the continuing practice of charging consumers credit

cards without authorization, constitutes a deceptive act or practice by Defendants in violation of the ICFA.

65.     In deceiving Plaintiffs and the Classes by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs and the Classes to proffer payment information based on that misrepresentation, Defendants have engaged in deceptive trade practices in violation of the ICFA.

66.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

67.     Defendants' misrepresentation of the price, in all phases of the marketing and sale of work-at-home products, is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

68.     Defendants have violated the "unfair" prong of the ICFA in that they caused substantial injury to consumers by charging their credit cards without their consent after inducing them to submit their payment information through deceptive marketing.  The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

69.     Defendants have violated the "fraudulent" prong of the ICFA in that their statements, advertisements, and representations regarding what consumers would be charged for its products are false and likely to deceive a reasonable consumer.

70.     Defendants intended that Plaintiffs and the Classes rely on their material misrepresentations and deception in that their reliance induced them to submit a credit card number that could thereafter be charged without authorization.

71.     Defendants' deception occurred during the marketing and sale of a work-at-home product and therefore occurred in the course of trade and commerce.

72.     Plaintiffs and the Classes have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendants in the form of actual monetary damages.

73.     Defendants violated the ICFA because their conduct violates the Automatic Contract Renewal Act (815 ILCS 601/1 *et seq.*) (*See* Count II).

74.     Plaintiffs seek an order (1) permanently enjoining Defendants from continuing to engage in unfair and unlawful conduct; (2) requiring Defendants to pay actual, compensatory and punitive damages pursuant to 815 ILCS 505/10a(a); (3) requiring Defendants to make full restitution of all funds wrongfully obtained; and (4) requiring Defendants to pay interest, attorney's fees, and costs pursuant to 815 ILCS 505/10a(c).

**COUNT II**
**Violation of the Automatic Contract Renewal Act**
**(815 ILCS 601/1 et seq.)**
**(On Behalf of Plaintiffs and the Pacific WebWorks Class)**

75.     Plaintiffs incorporate by reference the foregoing allegations.

76.     The Automatic Contract Renewal Act ("ACRA") (815 ILCS 601/1 *et seq.*) requires an entity enrolling a consumer in an automatically renewing contract to provide the renewal provision to the consumer in a clear and conspicuous manner.  Failure to provide the provision in a clear and conspicuous manner deems the automatic renewal provision unenforceable by the party who prepared the contract or directed its preparation.

77.     Pacific WebWorks's website, terms and conditions, and all other representations made by Defendant fail to notify the consumer in a clear and conspicuous manner of the recurring nature of the charges they assess and that the charges will be indefinitely renewed on a monthly basis.

78.    Pacific WebWorks intentionally conceals and misrepresents the nature of the charges, including the actual cost and how often they will be charged.

79.    Defendant's violation of the ACRA constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.).

80.    Plaintiffs, on their own behalf, and on behalf of the Pacific WebWorks Class, seek an order requiring Pacific WebWorks to immediately stop the unlawful practices stated in this Complaint, preventing Defendant from enforcing any automatic renewal provisions against Plaintiffs and the Pacific WebWorks Class, damages, and interest and attorney's fees and costs.

**COUNT III**
**Fraud in the Inducement**
**(On Behalf of Plaintiffs and the Classes)**

81.    Plaintiffs incorporate by reference the foregoing allegations.

82.    As described with particularity in paragraphs 8 through 54, and throughout all Counts of this Complaint, Defendants have disseminated, and continue to disseminate advertising and transaction pages that they know or should reasonably know are false and misleading.  This conduct includes, but it is not limited to, promoting and advertising "work-at-home" products without disclosing the actual price, a material term of any transaction. Defendants actively misrepresent and conceal the actual price(s) consumers are charged when they submit their credit card information.

83.    Through a series of advertisements, representations and false statements regarding the efficacy, association, and price of work-at-home products, Defendants acted in concert to misrepresent the actual price a consumer would be charged.  Intermark and Bloosky facilitated the widespread distribution of work-at-home offers by optimizing, directing and recruiting third party publishers to promote specific Pacific WebWorks landing pages that included deceptive

terms. Intermark and Bloosky had knowledge of the deceptive nature of these work-at-home offers and still sought to actively drive consumers to them for their own monetary gain.

84.     Pacific WebWorks, in conjunction with Intermark and Bloosky, took concrete and intentional steps to conceal the actual price ultimately placed on the credit cards of members of the Class and SubClasses. Pacific WebWorks intentionally made all representations of the actual price difficult to locate and/or read, by hiding these representations on a separate page, or displaying these representations far from the payment fields in a miniscule font and in an indistinct color.

85.     Intermark and Bloosky took concrete and intentional steps to conceal the actual price ultimately placed on the credit cards of members of the SubClasses. Intermark and Bloosky intentionally made all representations of the actual price difficult to locate and/or read, by hiding the price representations in its advertising material on a separate page, or omitting it in its entirety. Further, Intermark and Bloosky and their affiliate marketers assisted in the design of Pacific WebWorks landing pages so as to display the price representations far from the payment fields in a miniscule font and in an indistinct color.

86.     Pacific WebWorks, Intermark, and Bloosky actively took part in optimizing the work-at-home transaction pages so as to increase the rate of conversions (sales) and have full knowledge and visibility of the website content and each transaction, including knowledge of the concealed prices. For example, Intermark and Bloosky pay its affiliate marketers and publishers an amount far exceeding the *de minimis* product price advertised to consumers (*e.g.,* an ad network will offer an affiliate/publisher who drives traffic to a particular transaction page "$32.00 / Sale." The same page, posted for use by their stable of affiliates by Intermark or Bloosky, will state, "**Cost to Consumer:** $1.95"). Thus, all Defendants clearly understand that

the offer pages they create and post for publishers do not contain a clear and conspicuous disclosure of the actual price a consumer will be charged or, put differently, all know that a consumer will be charged a sum beyond $1.95.

87.     Defendants intentionally misrepresented the association their work-at-home products have with Google and other media outlets by making representations that the products stem from Google and have been endorsed by television networks.  Intermark and Bloosky knew that Pacific WebWorks and their affiliate publishers were actively misusing the Google name and other trademarks to deceive consumers.

88.     In furtherance of their fraudulent conduct, Defendants advertised and promoted their work-at-home products by using the word "free" and other variations of "free" where the actual charges, and/or any conditions placed on the offer were not clearly and conspicuously disclosed to the consumer at the time the offer was made.  Intermark and Bloosky knew that Pacific WebWorks was actively misusing the word "free" to deceive consumers.

89.     Defendants additionally promoted their products through a network of publishers operating fake news articles and fake blogs.  These promotions and marketing materials feature widespread use of the term "free" to describe Defendants' product. Intermark and Bloosky knew that their affiliate publishers were actively misusing the word "free" to deceive consumers.

90.     By committing the acts alleged in this Complaint, Defendants have knowingly disseminated untrue and/or misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase work-at-home products.

91. The price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a consumer product is materially misleading.

92. The misrepresentation of the price of a product is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

93. Defendants knew or should have known of the falsity of the representations made regarding the work-at-home products they marketed.

94. Defendants intended that the deceptive and fraudulent representations would induce a consumer to rely and act based on those false representations.

95. Plaintiffs and members of the Class and Subclasses were all charged monies beyond what they authorized. Accordingly, Plaintiffs and members of the Classes have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations of material fact.

96. In deceiving Plaintiffs and the Class by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs and the Classes to proffer payment information based on that misrepresentation, all Defendants have engaged in fraudulent practices designed to mislead and deceive consumers.

97. Plaintiffs and the Classes have suffered harm as a proximate result of the violations of law and wrongful conduct of the Defendants.

98. In deceiving Plaintiffs and the Subclasses by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs and the Subclasses to proffer payment information based on that misrepresentation,

Intermark and Bloosky have engaged in fraudulent practices designed to mislead and deceive consumers.

99.     Plaintiffs and the Subclasses have suffered harm as a proximate result of the violations of law and wrongful conduct of Intermark and Bloosky.

100.     Plaintiffs, on their own behalf, and on behalf of the Class and Subclasses, seek damages for Defendants' unlawful conduct.

## COUNT IV
### Conspiracy to Commit Fraud in the Inducement
### (On Behalf of Plaintiffs and the SubClasses)

101.     Plaintiffs incorporate by reference the foregoing allegations.

102.     Defendants acted in concert as business partners and through a common enterprise to drive sales of work-at-home products, and cram consumers' credit card bills with unauthorized charges through fraudulent and deceptive marketing, as stated in Count III of this Complaint.

103.     As a fundamental part of their business relationship, Defendants acted to deceive consumers regarding the actual price of the work-at-home products, thereby inducing consumers to submit their credit card information, on which Pacific WebWorks crammed unauthorized charges.  Perpetrating the fraudulent activity described herein requires multiple identical representations from Defendants, each one reinforcing the legitimacy of the deceptive offer; therefore, it is imperative for Pacific WebWorks, Intermark and Bloosky to work cooperatively and with knowledge of each other's marketing methods.  Intermark and Bloosky play the central role in creating a consistent appearance by ensuring that Pacific WebWorks transaction pages and their affiliate publishers' sponsored links, fake news articles and blogs all convey the same deceptive marketing message.

104.    Defendants took overt acts in furtherance of their conspiracy across the nation, and specifically took overt acts in furtherance within Illinois.  As described with particularity above, Defendants formed contracts with each other, created deceptive marketing, advertisements, websites, and other solicitation materials to drive consumers to the work-at-home transaction page with knowledge that the marketing contained therein was false and misleading, and with the intent that the marketing taken as a whole would be relied on by consumers.  Defendants further partnered with affiliate markers and publishers to increase the effectiveness of their deceptive and fraudulent marketing.  Defendants, working together, and working with non-defendant affiliate marketers and publishers, formed a mutually beneficial network of deceptive and misleading marketing designed to induce consumers to submit a credit card number for the purchase of a work-at-home product.

105.    Any single Defendant, acting alone, would be unable to accomplish the level of deception and misrepresentations accomplished by Defendants acting together.  The combination of their joint deception, embodied in the "creative" benefits derived from this combination, reinforces the appearance of legitimacy presented to consumers, thereby increasing the likelihood that a consumer will submit their credit card number.  Pacific WebWorks would not have the widespread reach to consumers across a wide variety of websites and would be unable to enroll customers with the same effectiveness without the direct involvement, assistance, and direction of Intermark and Bloosky.

106.    Plaintiffs and the SubClasses have suffered harm in the form of monetary damages as a proximate result of the conspiracy and violations of law carried out by Defendants.

107.    Plaintiffs, on their own behalf, and on behalf of the SubClasses, seek damages for Defendants' unlawful conduct.

**COUNT V**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Pacific WebWorks Class)**

108.    Plaintiffs incorporate by reference the foregoing allegations.

109.    In reliance upon Defendants' misrepresentations and deceptive advertising, Plaintiffs entered into a contract to receive a product from Pacific WebWorks at a genuinely discounted price, or for the cost of shipping and handling only.  Because of these deceptive misrepresentations, Plaintiffs and the Pacific WebWorks Class entered their credit card information with the understanding that they would only be charged a genuinely discounted price or the cost of shipping and handling in exchange for a product from Pacific WebWorks.

110.    By cramming additional undisclosed charges on the credit/debit cards of Plaintiffs and the members of the Pacific WebWorks Class, Pacific WebWorks breached the contract for the purchase of a product at the clearly disclosed price described above.  Plaintiffs and the members of the Pacific WebWorks Class did not assent to any additional charges and did not reasonably expect that the contract for purchase and sale would include such additional charges.

111.    At all times relevant to this action, Pacific WebWorks acted willfully and with the intent to breach the contracts they entered into with Plaintiffs and the Pacific WebWorks Class.

112.    Plaintiffs and the Pacific WebWorks Class have suffered damages as a direct result of Pacific WebWorks's acts and practices in the form of monies paid and lost.

113.    Plaintiffs, on their own behalf, and on behalf of the Pacific WebWorks Class, seek damages for Defendant's breach of contract, as well as interest and attorney's fees and costs.

**COUNT VI**
**Restitution/Unjust Enrichment (*in the alternative to Breach of Contract*)**
**(On Behalf of Plaintiffs and the Pacific WebWorks Class)**

114.    Plaintiffs incorporate by reference the foregoing allegations.

115.    Plaintiffs and members of the Classes conferred a monetary benefit on Defendant Pacific WebWorks.  Defendant has received and retained money belonging to Plaintiffs and the Classes resulting from substantial and unauthorized charges placed on their credit card bills by Pacific WebWorks.  Defendant profits from each individual purchase made by a consumer after being directed to Pacific WebWorks's transaction pages.

116.    Defendant appreciates or has knowledge of such benefit.

117.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and members of the Classes, which Defendant has unjustly received as a result of its unlawful actions.

118.    Plaintiffs and other members of the Classes suffered damages as a direct result of Defendant's conduct.

119.    Plaintiffs, on their own behalf, and on behalf of the Classes, seek restitution for Defendant's unlawful conduct, as well as interest and attorney's fees and costs.

### COUNT VII
### Restitution/Unjust Enrichment
### (On behalf of the Plaintiffs and the SubClasses)

120.    Plaintiffs incorporate by reference the foregoing allegations.

121.    Plaintiffs and members of the SubClasses conferred a monetary benefit on Defendants Intermark and Bloosky.  Defendants have received and retained money belonging to Plaintiffs and the SubClasses resulting from substantial and unauthorized charges placed on their credit card bills by Pacific WebWorks.  Intermark and Bloosky profit from each individual purchase after they direct a consumer to a Pacific WebWorks transaction page.

122.    Defendants appreciate or have knowledge of such benefit.

123.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and members of the SubClasses, which Defendants have unjustly received as a result of its unlawful actions.

124.    Plaintiffs and other members of the SubClasses suffered damages as a direct result of Defendants' conduct.

125.    Plaintiffs, on their own behalf, and on behalf of the SubClasses, seek restitution for Defendants' unlawful conduct, as well as interest and attorney's fees and costs.

**WHEREFORE**, Plaintiffs Barbara Ford and Phillip Favia, on behalf of themselves and members of the Class and SubClasses, pray for the following relief:

a.    Certify this case as a class action on behalf of the Class and SubClasses as defined above and appoint Barbara Ford and Phillip Favia as class representatives and undersigned counsel as lead counsel of this class action;

b.    Enter judgment against Pacific WebWorks, Inc. Intermark Communications, Inc. and Bloosky Interactive, LLC, for all monetary, actual, consequential, and compensatory damages caused by its unlawful conduct;

c.    Award Plaintiffs and the Classes civil penalties and/or punitive damages for violations of the above-cited statutes and law;

d.    Award Plaintiffs and the Classes reasonable costs and attorneys' fees;

e.    Award Plaintiffs and the Classes pre- and post-judgment interest;

f.    Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and,

g.    Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated:  April 20, 2010

EDELSON MCGUIRE, LLC

By:_____/s/ Christopher L. Dore_____

Christopher L. Dore

One of the Attorneys for Plaintiffs,
individually and on behalf of a class of
similarly situated individuals

Will Haselden (*admitted proc hac vice*)
Christopher Dore
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
whaselden@edelson.com
cdore@edelson.com

28