IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA FORD and PHILLIP FAVIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC WEBWORKS, INC., a Nevada corporation, THE QUAD GROUP, LLC, a Utah limited liability company, BLOOSKY INTERACTIVE, LLC, a California limited liability company, and INTERMARK COMMUNICATIONS, INC., a New York corporation,<br><br>Defendants. | No. 09 C 7867<br><br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

Barbara Ford and Phillip Favia (collectively, "plaintiffs") brought this putative class action against Pacific WebWorks, Inc. ("Pacific WebWorks"), The Quad Group, LLC ("the Quad Group"), Bloosky Interactive, LLC ("Bloosky"), and Intermark Communications, Inc. ("Intermark") (collectively, "defendants"), based on defendants' alleged deceptive and fraudulent marketing and billing of work-at-home products that promise consumers fast cash using Google. Plaintiffs bring claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and the Automatic Contract Renewal Act, 815 Ill. Comp. Stat. 601/1 *et seq.*, common law fraud, conspiracy to commit common law fraud, breach of contract, and unjust enrichment.[1] Before the court are Bloosky's

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

motions to dismiss plaintiffs' second amended complaint[2] and to strike plaintiffs' class definition, and Pacific WebWorks and the Quad Group's motion for judgment on the pleadings. For the following reasons, Bloosky's motion to dismiss [#75] is granted, Bloosky's motion to strike plaintiffs' class definition [#77] is denied as moot, and Pacific WebWorks and the Quad Group's motion for judgment on the pleadings [#86] is granted in part and denied in part.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In considering a Rule 12(c) motion, the court considers the complaint, the answer, and any written instruments attached as exhibits. *Id.* at 452–53. The court must accept all well-pleaded allegations in the complaint as true and must draw all reasonable inferences in the non-movant's favor. *United States* v. *Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). A grant of judgment on the pleadings is appropriate where "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Id.* Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

---

[2] Although labeled a motion to dismiss, Bloosky's motion is actually a motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND[3]

Pacific WebWorks and the Quad Group are related companies that provide online work-at-home products. Second Am. Compl. ¶¶ 3–4. Bloosky and Intermark are ad networks that generate online advertisements, consumer traffic, and conversion optimization for Pacific WebWorks and the Quad Group. *Id.* ¶¶ 5–6. They also act as affiliate marketers for Pacific WebWorks and the Quad Group. *Id.*

Of relevance to this case, defendants collaborate to host and market products purporting to provide consumers with the opportunity to work directly with and be paid by Google. *Id.* ¶¶ 10–11. Bloosky and Intermark, through its employee affiliate managers and affiliate publishers, create and operate spam email offers, sponsored links, banner ads on search pages, and links in fake news articles and blogs related to the Google offer. *Id.* ¶¶ 11–12, 14. These fake blogs, news articles, and consumer review sites have stories about how various individuals have made thousands of dollars a month using Pacific WebWorks's and the Quad Group's work-at-home products. *Id.* ¶¶ 20–21. The pages use stock photos and fabricated testimonials generated to correspond to the location of the consumer's computer's IP address. *Id.* ¶¶ 19, 22. Internet traffic from these offers and links is directed to Pacific WebWorks and the Quad Group landing pages, where consumers may purchase the advertised Google work-at-home product. *Id.* ¶¶ 12, 16. Bloosky and Intermark receive payment from Pacific WebWorks and the Quad Group for driving traffic to the landing pages. *Id.* ¶¶ 41, 50.

The work-at-home products sold by Pacific WebWorks and the Quad Group promise

---

[3] The facts recounted in this section are taken from the Second Amended Complaint and are presumed true for purposes of resolving the pending motions. Pacific WebWorks and the Quad Group have attached plaintiffs' responses to interrogatories to their motion. The court declines to consider these materials, which are not part of the pleadings. *See* Fed. R. Civ. P. 12(d).

purchasers the ability to, for example, "Earn up to $978 or more a day using GOOGLE" or "Work from Home & learn to make $1000s a day using GOOGLE!" *Id.* ¶¶ 16, 18. The landing pages typically present endorsements of the product from media networks even though the networks have never endorsed the products nor consented to use of their logos. *Id.* ¶ 17. In order to take advantage of what is billed as a limited time offer, consumers must provide Pacific WebWorks and the Quad Group with certain personally identifying information. *Id.* ¶ 23. They are promised the work-at-home products for $2.00 or less. *Id.* ¶ 24. On the online transaction page, the only term regarding price that is clearly and conspicuously displayed reads "**Total: $1.97**." *Id.* ¶¶ 27, 35. Unbeknownst to purchasers, however, they are charged a monthly fee of $79.90 for the product and often a separate $24.90 fee for another product as well. *Id.* ¶¶ 32–33.

Barbara Ford clicked on an advertisement on her AOL home page that offered a Google work-at-home opportunity as described above. *Id.* ¶ 39. The advertisement was placed by one of Bloosky's affiliate publishers and led to a fake news article describing how a woman made $5,000 a month using a Pacific WebWorks/Quad Group product. *Id.* After clicking on a link in the article, Ford was routed through Bloosky's server to a Pacific WebWorks/Quad Group landing page. *Id.* From this page, Ford understood that she could receive the advertised work-at-home product for $1.97. *Id.* She entered her credit card number on the transaction page, authorizing a charge of $1.97. *Id.* ¶ 41. She was charged an additional $79.90, a portion of which Pacific WebWorks/the Quad Group remitted to Bloosky. *Id.* Ford called repeatedly asking to cancel her order and for a refund, claiming that she never authorized the $79.90 charge and never received the product. *Id.* ¶ 42. Ford did not receive a refund, however. *Id.* ¶¶ 43–44. She then proceeded to cancel her credit card to avoid being billed again without authorization.

*Id.* ¶ 44.

Favia also clicked on an advertisement link offering a Google work-at-home opportunity that had been placed by one of Intermark's affiliate publishers. *Id.* ¶ 46. He was routed through Intermark's server to a Pacific WebWorks/Quad Group landing page, which offered him the work-at-home product for $1.97. *Id.* ¶ 47. When he sought to navigate away from the page, a pop-up offered him the product for just $0.99. *Id.* ¶ 48. He then chose to purchase the product, authorizing his credit card to be billed $0.99. *Id.* ¶ 50. Like Ford, he was also charged an additional $79.90, a portion of which Pacific WebWorks/the Quad Group remitted to Intermark. *Id.* ¶ 50. Favia never received the work-at-home product he ordered and requested a refund, which he has yet to receive. *Id.* ¶¶ 51–53, 55. He cancelled the credit card he had used to place the order. *Id.* ¶ 54.

## ANALYSIS

**I.**     **Fraud Claims**

Bloosky, Pacific WebWorks, and the Quad Group all argue that plaintiffs have not met the heightened pleading standard of Rule 9(b) for their fraud claims.[4] In order to meet Rule 9(b), plaintiffs must plead "the identity of the person who made the misrepresentation, the time, place

---

[4] ICFA allows for recovery for both unfair and deceptive conduct. *Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). A plaintiff asserting a cause of action for unfair practices under ICFA need not meet the heightened pleading standard of Rule 9(b). *Id.* at 670. Although plaintiffs claim to sue for both unfair practices and deceptive conduct, their claims of unfairness sound in fraud predicated on misrepresentation or omission and so Rule 9(b) applies. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Walgreen Co.*, --- F.3d ----, 2011 WL 183163, at *9 (7th Cir. Jan. 21, 2011); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *7 (N.D. Ill. Feb. 18, 2010) ("[I]f adding an allegation of 'unfairness' to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and be subject to the less stringent standard.").

5

and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (internal quotation marks omitted). In cases such as this one, where multiple defendants are involved, the complaint should not lump the defendants together but instead "should inform each defendant of the nature of [its] alleged participation in the fraud." *Vicom, Inc.* v. *Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted). Although Rule 9(b) may be relaxed in cases where plaintiffs lack access to the facts necessary to plead their claim in detail, *Corley* v. *Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998), such a relaxation is not warranted here. The information needed is not exclusively in defendants' control as plaintiffs were parties to the communications at issue and have access to various screenshots of defendants' offers. *See High Road Holdings, LLC* v. *Ritchie Bros. Auctioneers (Am.), Inc.*, No. 1:07-cv-4590, 2008 WL 450470, at *6 (N.D. Ill. Feb. 15, 2008).

Faced with a nearly identical complaint and similar motions, the district court in the Western District of Washington concluded that plaintiffs had sufficiently described "the ways in which defendants, working together, allegedly deceived consumers, including the touting of amounts that could be earned by just using Google or Amazon.com and the routing of consumers to fake testimonials and fabricated news articles. The Amended Complaint indicates that plaintiff . . . navigated to a Bloosky landing page purporting to be affiliated with Amazon.com, which routed her to a Pacific WebWorks, Inc. page requesting 'personally identifying information,' which [plaintiff] provided, resulting in the allegedly unauthorized charges at issue." *Rasmussen* v. *Pacific Webworks*, No. C09-1815Z, Dkt. No. 114 at 1–2 (W.D. Wash.

Dec. 22, 2010).[5] The *Rasmussen* complaint also identified the approximate dates on which plaintiffs' credit cards were billed for unauthorized amounts. The court would be inclined to adopt the *Rasmussen* court's reasoning were it not for the fact that this complaint does not specify when Ford and Favia made their purchases, let alone provide even a general time frame for when defendants' alleged fraudulent scheme took place, a fact that could be important, for example, for compliance with the statute of limitations. The fraud counts must be dismissed, then, for failure to meet Rule 9(b). As plaintiffs will be given leave to replead, in addition to providing dates, they should consider providing greater specificity as to the roles of each defendant in the fraud and more clearly alleging that plaintiffs were exposed to the allegedly fraudulent statements, so as not to invite another round of motions to dismiss. Plaintiffs need not plead evidence, however, such as the URL address at which they viewed the allegedly fraudulent advertisements, as Bloosky, Pacific WebWorks, and the Quad Group argue. *See Sequel Capital, LLC* v. *Pearson*, No. 07-CV-2642, 2010 WL 4008161, at *6 (N.D. Ill. Oct. 13, 2010).

## II.    Automatic Contract Renewal Act Claim

The Automatic Contract Renewal Act provides that businesses that "sell any products or services to a consumer pursuant to a contract, where such contract automatically renews unless the consumer cancels the contract, shall disclose the automatic renewal clause clearly and conspicuously in the contract, including the cancellation procedure." 815 Ill. Comp. Stat. 601/10(a). Plaintiffs have pleaded that the only price term that was clearly displayed to them by Pacific WebWorks and the Quad Group was the $1.97 (or, in Favia's case, $0.99) charge they agreed to. *See* Second Am. Compl. ¶¶ 27, 35, 41, 48–50. They have alleged that the real price,

---

[5] Counsel in this case is also involved in *Rasmussen*.

which would include notification of a recurring charge, was hidden in small print or not disclosed at all. *See id.* ¶¶ 31–33. From these allegations, the court can infer that an automatic renewal clause, if one existed at all, was not clearly and conspicuously displayed on Pacific WebWorks's and the Quad Group's transaction pages. Thus, plaintiffs have sufficiently stated a claim for violation of the Automatic Contract Renewal Act against Pacific WebWorks and the Quad Group.

### III. Breach of Contract Claim

Pacific WebWorks and the Quad Group argue that plaintiffs have not stated a legally viable theory for their breach of contract claim. Plaintiffs have alleged that they entered into a contract with Pacific WebWorks and the Quad Group that entailed their paying $0.99 or $1.97 in exchange for receiving the work-at-home product. They claim that this contract was breached when Pacific Web Works and the Quad Group charged them more than this amount. Further development of the record may demonstrate that, by providing their credit card number, plaintiffs authorized charges above the amounts they believed they agreed to. At this stage, however, the court must accept plaintiffs' allegations that the total cost of the product plaintiffs agreed to purchase was under $2.00. The allegations that they were charged more than this amount are sufficient to state a claim for breach of contract against Pacific WebWorks and the Quad Group.[6]

---

[6] In a footnote in their response, plaintiffs also claim that Pacific WebWorks and the Quad Group breached their contracts by failing to send plaintiffs the products they purchased. The only allegations regarding plaintiffs' receipt of the products are that they informed customer service representatives when asking for refunds that they had not received the products. As plaintiffs will be given the chance to file an amended complaint, they should more clearly allege failure to receive the products if they wish to pursue such a breach of contract theory.

## IV. Unjust Enrichment Claims

Because plaintiffs' unjust enrichment claims sound in fraud, the heightened pleading standard applies. *Borsellino* v. *Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The court has already concluded that plaintiffs have failed to sufficiently allege the circumstances surrounding the fraud. Thus, the unjust enrichment claims will be dismissed without prejudice as well.[7] *See Nieto* v. *Perdue Farms, Inc.*, No. 08-07399, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010).

## V. Bloosky's Motion to Strike the Bloosky Subclass Definition

As the court is dismissing all of plaintiffs' claims directed against Bloosky, Bloosky's motion to strike the Bloosky subclass definition is moot. In the event that plaintiffs sufficiently

---

[7] As the court dismisses plaintiffs' unjust enrichment claims for failure to meet Rule 9(b), it need not address Bloosky's and Pacific Webworks and the Quad Group's remaining arguments about whether plaintiffs' unjust enrichment claims are viable. Similarly, having concluded that all claims against Bloosky should be dismissed, Bloosky's arguments regarding section 230 of the Communications Decency Act and the voluntary payment doctrine will not be addressed. The parties should be mindful, however, of the fact that the court in *Rasmussen* rejected these arguments, although its analysis of the applicability of the voluntary payment doctrine would not apply here. *See Rasmussen*, No. C09-1815Z, Dkt. No. 114 at 2. While the *Rasmussen* decision is not binding on this court, it is well reasoned and thus instructive. With respect to plaintiffs' unjust enrichment claims, breach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim. *See, e.g.*, *Prudential Ins. Co. of Am.* v. *Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008). Further, as Bloosky is not alleged to be a party to a contract with plaintiffs, its argument that Ford's unjust enrichment claim against it is barred because there is a valid contract is unavailing. *See Greenpoint Mortg. Funding, Inc.* v. *Family First Mortg., Inc.*, No. 05 C 4498, 2007 WL 2608554, at *3 (N.D. Ill. Sept. 4, 2007) ("All of the cases cited by [defendant] involve contracts between the plaintiff and the party against whom an unjust enrichment claim is stated. Absent any alleged contractual relationship between [plaintiff] and [defendant], [defendant] is not entitled to dismissal of [plaintiff's] unjust enrichment claims." (citations omitted)); *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs *the relationship of the parties*, the doctrine of unjust enrichment has no application.'" (quoting *La Throp* v. *Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195, 68 Ill. 2d 375, 12 Ill. Dec. 565 (1977)) (emphasis added)); *Mid-West Energy Consultants, Inc.* v. *Covenant Home, Inc.*, 815 N.E.2d 911, 917, 352 Ill.App.3d 160, 287 Ill.Dec. 267 (2004) ("When a contract exists *between the parties*, no quasi-contractual claim, such as quantum meruit, can arise." (emphasis added) (citations omitted)).

replead their claims against Bloosky, the court will not entertain a motion to strike the Bloosky subclass definition based on a purported failure to satisfy the requirements of Rule 23(b)(3). Bloosky's arguments about whether individual issues will predominate over common class issues should be made in response to plaintiffs' class certification motion. Plaintiffs should, however, incorporate the *Rasmussen* court's instructions as to amending the Bloosky subclass definition (and, in this case, the other class definitions as well) to address the concerns of overbreadth and vagueness raised by Bloosky in its motion. *See Rasmussen*, No. C09-1815Z, Dkt. No. 114 at 3. They should also include class periods in the proposed class definitions.

## CONCLUSION AND ORDER

For the foregoing reasons, Bloosky's motion to dismiss [#75] is granted, its motion to strike plaintiffs' class definition [#77] is denied as moot, and Pacific WebWorks and the Quad Group's motion for judgment on the pleadings [#86] is granted in part and denied in part. Counts I, III, IV, VI, and VII are dismissed without prejudice and with leave to replead. Plaintiffs have until February 18, 2011 to file an amended complaint.

Dated: February 4, 2011   Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge