**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BARBARA FORD and PHILLIP FAVIA,** individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 09 C 7867<br>)<br>) Judge Joan H. Lefkow |
| **PACIFIC WEBWORKS, INC.**, a Nevada corporation, **THE QUAD GROUP, LLC**, a Utah limited liability company, **BLOOSKY INTERACTIVE, LLC**, a California limited liability company, and **INTERMARK COMMUNICATIONS, INC.**, a New York corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants/Cross-Plaintiff/ Cross-Defendants. | )<br>) |

**OPINION AND ORDER**

Barbara Ford and Phillip Favia (collectively, "plaintiffs") brought a putative class action against Pacific WebWorks, Inc. ("Pacific WebWorks"), The Quad Group, LLC ("the Quad Group"), Bloosky Interactive, LLC ("Bloosky"), and Intermark Communications, Inc. ("Intermark") (collectively, "defendants"), based on defendants' alleged deceptive and fraudulent marketing and billing of work-at-home products that promise consumers fast cash using Google.[1] Bloosky filed a cross-claim against Pacific WebWorks and the Quad Group for breach of contract, equitable indemnification, and contribution based on Pacific Webworks's and the Quad Group's refusal to indemnify and undertake Bloosky's defense in this action. Before

---

[1] In its February 4, 2011 Opinion and Order, the court dismissed without prejudice counts I, III, IV, VI, and VII of plaintiffs' amended complaint and provided them with leave to replead these counts. Plaintiffs filed their third amended complaint on February 18, 2011.

the court is Pacific WebWorks' and the Quad Group's motion to dismiss Bloosky's cross-claim for lack of jurisdiction and improper venue. For the following reasons, the motion [#56] is granted.

## BACKGROUND

Bloosky entered into several agreements with Pacific WebWorks and the Quad Group under which Bloosky agreed to provide Pacific WebWorks and the Quad Group with certain services to market their products, including the Google work-at-home products that are the basis for plaintiffs' claims against defendants.[2] The agreements include the following: an August 2007 master advertising agreement between Bloosky and Pacific WebWorks ("the Master Advertising Agreement"), a September 2008 insertion order for Pacific WebWorks's online success kit advertising campaign ("the Pacific WebWorks Insertion Order"), a November 2009 settlement and release agreement between Bloosky and Pacific WebWorks ("the Pacific WebWorks Settlement Agreement"), a June 2009 insertion order for the Quad Group's Google start-up campaign ("the Quad Group Insertion Order"), and a November 2009 settlement and release agreement between Bloosky and the Quad Group ("the Quad Group Settlement Agreement"). In the agreements, Pacific WebWorks and the Quad Group represented that they had reasonable bases for the claims made in the advertisements being placed with Bloosky and would comply with all applicable laws. They also agreed that Bloosky had no obligation to review, screen, or edit the advertisements. Each of the agreements contains similar indemnification provisions providing that Pacific WebWorks or the Quad Group will indemnify, defend, and hold Bloosky

---

[2] A description of the allegations of the underlying complaint can be found in the court's February 4, 2011 Opinion and Order.

2

harmless from all claims arising from breaches of the agreements. Specifically, the Master Advertising Agreement provides that indemnification will be for claims relating to lawsuits alleging, as relevant here, "fraud, false advertising, misrepresentation, . . . or violation of any law, statute, ordinance, rule or regulation throughout the world arising from or relating to the Advertisement or with personal information collected or used by [Pacific WebWorks or the Quad Group]." Ex. A to Cross-Claim at § 11. The remaining agreements provide that Pacific WebWorks and the Quad Group will defend and indemnify Bloosky with respect to damages, costs, and expenses that "may be sustained or suffered . . . in connection with any present or future . . . claim, action, suit or proceeding . . . to which [Bloosky] is or was a party or is threatened to be made a party, and that arises from or is related to a material breach of [the agreement]." Ex. D to Cross-Claim at § 5; *see also* Ex. B to Cross-Claim at § 5 (indemnification for claims that "arise[ ] from or [are] related to this [insertion order] or [Pacific WebWorks's] advertisement"); Ex. C to Cross-Claim at § 11 (indemnification for claims "arising out of or relating to a material breach of this Agreement, the Advertising Agreement, and/or the Related Agreements"); Ex. E to Cross-Claim at § 11 (indemnification for claims "arising out of or relating to a material breach of this Agreement, the Insertion Order, and/or the Related Agreements").

Each of the agreements includes a forum selection clause. The Master Advertising Agreement provides that "[t]his Agreement shall be governed by the laws of the State of Nevada without respect to choice of law rules and the Parties hereby consent to exclusive jurisdiction and venue in the state and federal courts in and serving Clark County, Nevada." Ex. A to Cross-Claim at § 10.10. The Pacific WebWorks Insertion Order provides that "[t]his [agreement] shall

be governed by the laws of the State of California without respect to choice of law rules and the Parties hereby consent to exclusive jurisdiction and venue in the state and federal courts in and serving Orange County, California." Ex. B to Cross-Claim at § 5. The Pacific WebWorks Settlement Agreement, the Quad Group Insertion Order, and the Quad Group Settlement Agreement also provide for the application of California law and exclusive venue in the state and federal courts serving Orange County, California. Ex. C to Cross-Claim at § 14; Ex. D to Cross-Claim at § 5; Ex. E to Cross-Claim at § 14.

## ANALYSIS

In the Seventh Circuit, "[a] lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." *Cont'l Ins. Co.* v. *M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003). "In ruling on a motion to dismiss under Rule 12(b)(3), the court takes all the allegations in the complaint as true unless contradicted by an affidavit and may examine facts outside of the complaint." *Interlease Aviation Investors II (ALOHA) L.L.C.* v. *Iowa Corp.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003).

The parties agree on the validity of the forum selection clauses, instead only disputing whether the cross-claim falls within their scope and whether enforcement would be unreasonable in this situation.[3] Although only one of the three counts of Bloosky's cross-claim explicitly

---

[3] In the Seventh Circuit, the validity of the forum selection clause depends on the law of the jurisdiction specified in the agreement. *Abbott Labs.* v. *Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case." (citations omitted)). The agreements at issue are governed by Nevada or California law. The parties cite to Nevada, California, and federal law in support of their arguments but have not identified a conflict in these laws. As the three sources of law all use the same general standard in determining the enforceability of forum selection clauses, they will be cited to interchangeably. *See Kochert* v. *Adagen*

4

sounds in contract, it is disingenuous to argue that the remaining two do not flow from the parties' agreements and will not involve issues of contract interpretation. In its cross-claim, Bloosky specifically alleges that "[t]he claims in the Second Amended Complaint arise from the contractual relationships and advertising campaigns . . . , material breaches of the agreements . . . , and the conduct of [the Quad Group] and Pacific [WebWorks]." Cross-Claim ¶ 19. While Bloosky then alleges that Pacific WebWorks and the Quad Group are solely responsible for all conduct and injuries alleged in the underlying complaint regardless of whether they breached their agreements with Bloosky, *id.* ¶ 20, Bloosky's stated basis for being entitled to equitable indemnification is Pacific WebWorks's and the Quad Group's "fail[ure] to use reasonable care in performing [their] obligations under their contracts with Bloosky," *id.* ¶ 33. Because there is no other proffered or readily apparent basis for Pacific WebWorks and the Quad Group being liable for indemnification or contribution, the pleading of alternative non-contractual theories does not remove the cross-claim from the scope of the forum selection clauses. *See Hugel* v. *Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *Bancomer, S.A.* v. *Superior Court*, 52 Cal. Rptr. 2d 435, 442 (Cal. Ct. App. 1996) (quoting *Manetti-Farrow, Inc.* v. *Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)); *cf. Tuxedo Int'l Inc.* v. *Rosenberg*, --- P.3d ----, 2011 WL 461645, at *10–11 (Nev. Feb. 10, 2011) (adopting a hybrid approach to determining whether a claim falls within the scope of a forum selection clause, first looking to the text of the clause and, if the parties' intentions are not clear, to whether resolution of the claim relates to interpretation of the contract or involves the same operative facts as a parallel breach of contract claim).

---

*Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007).

Forum selection clauses are enforceable unless the party resisting enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). Bloosky has the burden of demonstrating that the clause should not be enforced because "the forum selected would be unavailable or unable to accomplish substantial justice." *CQL Original Prods., Inc.* v. *Nat'l Hockey League Players' Ass'n*, 46 Cal. Rptr. 2d 412, 415–16 (Cal. Ct. App. 1995); *see also Abbott Labs.* v. *Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("[O]rdinarily the parties' contractual choice of forum should be overriden only if that choice would impose significant costs on third parties or on the judicial system."); *Tandy Computer Leasing* v. *Terina's Pizza, Inc.*, 784 P.2d 7, 8 (Nev. 1989) (forum selection clause should not be enforced where it contravenes a strong public policy of the state). Bloosky has not demonstrated that the Nevada or California courts would be unavailable or that it would be deprived of its day in court for all practical purposes if required to refile its cross-claim in one of these forums.[4] While there may be some inefficiency in requiring Bloosky to refile its cross-claim in California or Nevada and for a court there to become familiar with the facts of the case, such inconvenience is not enough to displace the parties' contracted-for forum.[5] *See La Fondiaria Assicurazione, S.P.A.* v. *Ocean World Lines, Inc.*, No. 02 Civ. 40 JSM, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) ("Admittedly, it might be more

---

[4] Acknowledging that the forum selection clauses provide for conflicting forums, Pacific WebWorks and the Quad Group agree to stipulate to venue in one of the selected jurisdictions. This should alleviate Bloosky's concern that it could be forced to litigate a portion of its cross-claim in Nevada and the remainder in California.

[5] This is especially the case here, where the forum selection clauses are contained in documents prepared by Bloosky, the party now arguing that the clauses are unreasonable.

efficient to dispose of the entire case in one court, but that is not the standard for overcoming a forum selection clause.").

Courts that have determined that forum selection clauses are unreasonable have generally been faced with more extreme situations than that presented here, where enforcement would lead to parallel proceedings involving the same issues in at least two different venues that could result in conflicting judgments. *See Mylan Pharm. Inc.* v. *Am. Safety Razor Co.*, 265 F. Supp. 2d 635, 639 (N.D. W. Va. 2002) (refusing to enforce a forum selection clause where only one of the various cross-claims for indemnification against the same party was subject to a forum selection clause); *LaSala* v. *E*Trade Sec. LLC*, No. 05 Civ. 5869(SAS), 2005 WL 2848853, at *6 (S.D.N.Y. Oct. 31, 2005) (refusing to enforce a forum selection clause where over seventy similar actions would remain pending in the district); *Woods* v. *Christensen Shipyards, Ltd.*, No. 04-61432-CIV, 2005 WL 5654643, at *11 (S.D. Fla. Sept. 23, 2005) (refusing to enforce a forum selection clause where enforcement would result in two plaintiffs litigating their case against the defendant in one forum and another plaintiff litigating the same case against the same defendant in another). This is not such a situation; the issues to be decided in the underlying litigation are separate and distinct from whether Pacific WebWorks and the Quad Group are liable for indemnification or contribution.[6] Because the parties agreed prior to the advent of any litigation that disputes related to the agreements would be litigated in California or Nevada, Bloosky's

---

[6] As it stands, Bloosky faces potentially conflicting judgments regarding its cross-claim, as it has filed virtually identical cross-claims in cases in which it is involved in the District of Utah and the Western District of Washington. If these courts also enforce the forum selection clauses, Bloosky could consolidate its claims against Pacific WebWorks and the Quad Group in one action instead of litigating them in parallel proceedings in front of different courts.

breach of contract, indemnification, and contribution claims should be decided there. Thus, Bloosky's cross-claim will be dismissed without prejudice to refiling in the appropriate forum.

## CONCLUSION AND ORDER

For the foregoing reasons, Pacific WebWorks and the Quad Group's motion to dismiss [#56] is granted. Bloosky's cross-claim is dismissed without prejudice to refiling in accordance with the forum selection clauses contained in its agreements with Pacific WebWorks and the Quad Group. This case will be called for a status hearing on March 22, 2011 at 8:30 a.m.

Dated: February 23, 2011            Enter: _____
                                           JOAN HUMPHREY LEFKOW
                                           United States District Judge